AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JESUS HERNANDEZ, DOMINGO ANTONIO RODRIGUEZ, FRANCISCO LORENZO, ISBEL GUTIERREZ and JESUS ROJAS | ) ) ) ) ) | Case No. 12-8163-DLB |
| *Defendant(s)* | | |

FILED by _____ D.C.

APR 2 0 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 14-19, 2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| United States Code 21, Sections 841(a)(1) and 846 | Conspiracy to possess with intent to distribute over 500 grams of cocaine and possession with intent to distribute over 500 grams of cocaine. |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ian Lance MacVane, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4-20-12__

_____
*Judge's signature*

City and state: __West Palm Beach, FL__   Dave Lee Brannon, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT
# SPECIAL AGENT
# IAN LANCE MACVANE
# DRUG ENFORCEMENT ADMINISTRATION

I, Ian Lancer MacVane, a Special Agent with the United States Drug Enforcement Administration (DEA), United States Department of Justice, having been duly sworn, depose and state:

1. I am assigned to the DEA Fort Lauderdale, Florida District Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Special Agent with DEA, assigned to the Miami Field Division, since August 2009. Prior to becoming a DEA Special Agent, I was a Task Force Officer (TFO) with DEA West Palm Beach Resident Office (WPBRO) from June 2005 to March 2009. I was also employed as a Police Officer for the City of West Palm Beach Police Department (WPBPD) since January of 1997. Prior to my assignment to the DEA, I was assigned to the Special Investigations Division (SID) of the WPBPD for a period of approximately five years for the purpose of investigating narcotic and dangerous drug related complaints. I was also a member of the WPBPD SWAT team for approximately 9 years prior to March 2009. The WPBPD SWAT team conducted drug related search warrants on a monthly basis. During my law enforcement experience, I have investigated cases involving controlled substances since 2000. I have participated in numerous narcotics investigations, during the course of which I have conducted physical and wire surveillance, executions of search warrants, and reviews and analyses of taped conversations and records of drug traffickers. Through my training, education, and experience, which has included debriefing

1

cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, investigation, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking, I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement, as well as methods used to finance drug transactions and launder drug proceeds. I am also aware that drug traffickers often speak in guarded or coded language when discussing their illegal business in an effort to further prevent detection. Among other duties, I am now responsible for the instant investigation.

2. The purpose of this affidavit is to establish that there is probable cause to believe that Jesus HERNANDEZ, Domingo Antonio RODRIGUEZ, a/k/a "Giovanni," Francisco LORENZO, a/k/a "Panchito," a/k/a "Pancho," Isbel GUTIERREZ, and Jesus ROJAS, a/k/a "Tico," did knowingly and intentionally combine, conspire, and agree to possess with the intent to distribute a controlled substance, and did possess with intent to distribute a controlled substance, that is, five hundred grams or more of cocaine, in violation of Title 21, United States Code Sections 841(a)(1) and (b)(1)(B) and 846.

3. In September 2011, agents met with a DEA Confidential Source (CS) who provided information on Jesus HERNANDEZ. The CS told agents that HERNANDEZ was a cocaine dealer who resided in Royal Palm Beach, Florida, who had supplied the CS with multiple kilograms of cocaine in the past. The CS was a target in this investigation, and is cooperating in the hopes of reducing his criminal exposure. The CS has multiple prior arrests that have not resulted in conviction, and prior conviction for Simple Assault and Resisting an Officer without Violence. The CS has provided information in the past and proven to be reliable.

2

4.     During November 2011, following a number of recorded conversations between the CS and HERNANDEZ, an undercover agent was introduced to HERNANDEZ. On November 8, 2011, the undercover agent, through the CS, purchased approximately nine ounces of a cocaine from HERNANDEZ at HERNANDEZ's residence on Orange Grove Blvd., in Royal Palm Beach in the Southern District of Florida. Testing yielded positive results for the presence of cocaine.

5.     In January 2012, agents received judicial authorization to intercept wire communications over HERNANDEZ's cellular telephone. Agents only intercepted HERNANDEZ's cellular telephone number for approximately seven days before HERNANDEZ dropped that telephone and obtained a new one. Thereafter, agents obtained authority to intercept wire communications over HERNANDEZ's new cellular telephone.

6.     On February 22, 2012, a DEA undercover agent and the CS purchased approximately nine ounces of white powdery substance from HERNANDEZ at HERNANDEZ's residence located on Orange Grove Blvd. in Royal Palm Beach, Florida. Intercepted calls indicated that LORENZO delivered cocaine to HERNANDEZ prior to the transaction with the undercover Agent. Agents conducted surveillance of HERNANDEZ and LORENZO and observed them meeting at a location in Loxahatchee, Florida, prior to the sale to the undercover agent. Agents then observed HERNANDEZ drive from Loxahatchee to his residence in Royal Palm Beach, Florida, where he distributed the nine ounces of a white powdery substance to the undercover agent there. After the undercover agent paid HERNANDEZ the money for the cocaine, agents intercepted calls between HERNANDEZ and LORENZO in which they coordinated meeting in West Palm Beach, Florida, so HERNANDEZ could transfer the money to LORENZO. Surveillance agents later saw

LORENZO and HERNANDEZ meet. Agents saw HERNANDEZ exchange what agents believe was the payment for the nine ounces of cocaine to LORENZO.

7. On March 12, 2012, at approximately 11:15 a.m., LORENZO called Carlos Jose MARCELO. MARCELO said the cocaine kilograms may arrive on Wednesday, March 14, 2012, or Thursday, March 15, 2012. LORENZO said his cocaine customers were waiting, including a cocaine customer that he makes a good profit from. At approximately 12:45 p.m., the CS placed a call at the direction of agents to LORENZO. The CS asked, "How much for two big ones." HERNANDEZ later replied, "…I don't know. Let me call him…" Agents believe the CS asked HERNANDEZ for the price of two kilograms of cocaine and HERNANDEZ said he would call his cocaine supplier to find out. Immediately after this conversation, HERNANDEZ called LORENZO. During this call, HERNANDEZ asked LORENZO for the price on one kilogram of cocaine. LORENZO said he would sell the kilogram of cocaine to HERNANDEZ for $29,000, but HERNANDEZ should re-sell it for $30,000 and make $1,000 or $500 on the re-sell. LORENZO said he had just spoken to MARCELO, and the cocaine shipment was due to arrive March 13 or March 14, 2012. At approximately 12:51 p.m., HERNANDEZ called the CS. During the call, HERNANDEZ informed the CS that the price of two kilograms of cocaine was $60,000.

8. On March 22, 2012, at approximately 11:22 a.m., LORENZO received a call from an individual who told LORENZO, "Three if you can." Agents believe this person asked to buy three kilograms of cocaine from LORENZO. LORENZO said he would call MARCELO. Immediately after this call, LORENZO called MARCELO. During this call, LORENZO told MARCELO that he needed three kilograms of cocaine. MARCELO said he had not obtained the kilograms of cocaine yet and would obtain them in approximately one hour. At approximately 12:09 hours, a surveillance agent saw MARCELO drive away from his

4

residence. Agents followed MARCELO, but lost track of him. At approximately 12:31 p.m., MARCELO called LORENZO. During the call, MARCELO asked LORENZO to come to his (MARCELO's) residence. LORENZO said, "What was I going to tell you...the three?" MARCELO affirmed. LORENZO asked, "Does the girl look good or not?" MARCELO affirmed and said he "just arrived." Agents believe MARCELO had obtained at least three kilograms of cocaine from a larger cocaine shipment that had arrived. Agents later saw LORENZO arrive at MARCELO's residence, stay a few minutes and leave. At approximately 1:10 p.m., shortly after LORENZO left MARCELO, LORENZO called his buyer. LORENZO said, "I got the work for you already, you heard?" The buyer affirmed. LORENZO said, "Uh...that, what he has left, of the thirty, he only has four left." The buyer affirmed and asked "how many" did LORENZO obtain. LORENZO replied, "...three of them." LORENZO later said, "(U/I)...clear, it's really...it's like a truck that's white, white, white." Agents believe that LORENZO was informing the buyer that the cocaine shipment had arrived, and that MARCELO had only been able to obtain four kilograms of cocaine from the thirty cocaine kilograms that had arrived in the shipment. LORENZO said that he had been able to obtain three cocaine kilograms from MARCELO for the buyer. At approximately 7:37 p.m, agents saw a person driving from West Palm Beach toward Royal Palm Beach after the call between the buyer and LORENZO. Agents ended up losing track of LORENZO prior to LORENZO's arrival at the buyer's location. At approximately 8:24 p.m., LORENZO called his girlfriend and said he had finished what he was doing. Agents believe LORENZO had just distributed the three kilograms of cocaine to the buyer by the time of this call. At approximately 8:29 p.m., LORENZO called MARCELO and said, "I won't be able to pay you until tomorrow." Agents believe LORENZO could not collect the cocaine payment from the buyer and would pay MARCELO on a later date.

5

9.      On March 23, 2012, at approximately 9:44 a.m., LORENZO called the buyer, who said, "...they going to stay with the one, the one they opened, the one that came opened and the other two I have here." Agents believe the caller informed LORENZO that his cocaine buyer was not pleased with the quality of two of the three kilograms of cocaine LORENZO had dropped off, and that the buyer only kept one kilogram and returned the other two. LORENZO agreed to take the cocaine payment for one kilogram of cocaine, and to pick up the other two kilograms that the cocaine buyer did not want. At approximately 10:24 a.m., LORENZO called MARCELO and said, "I'm going to pick up now...they're going to return two and the money for one to me." Agents believe LORENZO was informing MARCELO that he would be returning two kilograms of cocaine and the payment for one kilogram of cocaine. MARCELO said no one else had been complaining about the quality of the other cocaine he had been distributing from the cocaine shipment. At approximately 11:00 a.m., agents saw LORENZO arrive at a residence located in Loxahatchee Groves, Florida. Several minutes later, LORENZO left the residence. At approximately 11:14 a.m., LORENZO called MARCELO and said, "Listen...I picked two back up and the tickets for, for one." LORENZO later said, "What I'm going to do is, is, because I was going to Miami, to the roosters, but I was going to call my woman so that she can pick them up..." Agents believe LORENZO informed MARCELO that he had picked up two poor quality kilograms of cocaine and the payment for one kilogram of cocaine. LORENZO said he was instead going to Miami to gamble on cockfights and would drop the cocaine and payment off to his live-in girlfriend, Isbel GUTIERREZ. At approximately 11:18 a.m., LORENZO called his live-in girlfriend, Isbel GUTIERREZ. LORENZO said, "...they only took one only." GUTIERREZ replied, "Oh Holy Mary." LORENZO said, "Because the one they opened broke down, they got pissed, that it wasn't good, that I don't know what...they only took one." Agents believe LORENZO asked

6

GUTIERREZ to come and pick up the two kilograms of cocaine and the payment for one kilogram of cocaine from him, so he could go to Miami. At approximately 11:31 a.m., agents saw LORENZO arrive at a residence in Loxahatchee, Florida, where LORENZO also keeps live chickens. LORENZO left a few minutes later. At approximately 12:35 p.m., agents saw GUTIERREZ arrive at the house that LORENZO had just left. At approximately 12:43 p.m., LORENZO received a call from GUTIERREZ. During this call, LORENZO told GUTIERREZ where to locate the two kilograms of cocaine and the payment for one kilogram of cocaine, which were left in chicken feed tanks at the residence in Loxahatchee, Florida. Shortly thereafter, agents saw GUTIERREZ leave the residence and return to the residence she shared with LORENZO. An agent saw GUTIERREZ arrive, remove a package from her vehicle, and then carry the package into the residence. At approximately 1:11 p.m., LORENZO received a call from MARCELO. During the call, LORENZO said if MARCELO would leave the two kilograms of cocaine at his (LORENZO's) residence, since he may be able to sell them on March 24, 2012. MARCELO refused and said he would hold the two kilograms of cocaine for LORENZO, in case MARCELO's supplier asked for the cocaine back. At approximately 1:46 p.m., an agent saw MARCELO arrive at LORENZO's residence in West Palm Beach, Florida, where GUTIERREZ was, and enter the residence. Several minutes later, MARCELO exited the front door of the residence carrying two white plastic shopping bags which appeared to contain heavy items. MARCELO placed the bags in the backseat of his vehicle and drove away. Agents followed MARCELO, who conducted what appeared to be counter-surveillance driving. As a result, agents discontinued surveillance on MARCELO at that time.

10. On March 26, 2012, at approximately 9:42 a.m., LORENZO called MARCELO. During the call, LORENZO asked if MARCELO still had the kilogram of cocaine and said he would pick-up the cocaine as soon as Domingo Antonio RODRIGUEZ, a/k/a "Giovanni,"

7

called him. At approximately 10:03 a.m., LORENZO received a call from MARCELO, who said he had a conflict and could not deliver the kilogram of cocaine to LORENZO. MARCELO said he would check and see if his girlfriend's son would help by delivering the cocaine. At approximately 10:57 a.m., LORENZO received a call from Domingo Antonio RODRIGUEZ, a/k/a "Giovanni." Agents were able to verify RODRIGUEZ's identity through surveillance and by obtaining judicial authorization to track the location data of RODRIGUEZ's cellular telephone. During the call, LORENZO said he had spoken to MARCELO and could pick up the cocaine for RODRIGUEZ. At approximately 11:54 a.m., LORENZO received a call from MARCELO, who said that his girlfriend's son would meet LORENZO on Belvedere Rd. with the cocaine. At approximately 11:56 a.m., LORENZO called MARCELO. During the call, MARCELO told LORENZO that his girlfriend's son drove a black Ford truck with a rack on top of the bed. LORENZO told MARCELO to tell the girlfriend's son to come outside. Shortly thereafter, an agent saw LORENZO park his vehicle in a parking lot in front of a business in West Palm Beach, Florida, next to a black Ford pick-up truck, with Florida tag M383PX, which is registered to Jesus R. ROJAS, 1026 Dogwood Rd., West Palm Beach, Florida. An agent saw Jesus ROJAS exit a business carrying a white bag. ROJAS approached LORENZO, who was standing outside his vehicle, and handed LORENZO the white bag. LORENZO left the parking lot with the bag. At approximately 12:02 p.m., LORENZO called RODRIGUEZ, and said that he had obtained the kilogram of cocaine and would meet RODRIGUEZ at a location in West Palm Beach, Florida. At approximately 12:04 p.m., LORENZO received a call from MARCELO. During the call, LORENZO said he had picked up the kilogram of cocaine from ROJAS. At approximately 1:05 p.m., an agent saw RODRIGUEZ arrive at a residence in West Palm Beach, Florida, where LORENZO was already at standing in the driveway. RODRIGUEZ stayed in the

8

driver's seat as LORENZO approached the minivan's open passenger slide door. At approximately 1:08 p.m., RODRIGUEZ drove away from the residence, as did LORENZO in a different vehicle. Agents followed RODRIGUEZ, who began what agents believe were counter-surveillance moves. As a result, agents discontinued surveillance of RODRIGUEZ. At approximately 1:51 p.m., LORENZO received a call from RODRIGUEZ. RODRIGUEZ said he had already delivered the cocaine to his cocaine buyer and was on his way to drop the cocaine payment off at LORENZO's residence. At approximately 1:59 p.m., LORENZO received a call from GUTIERREZ. During the calls, GUTIERREZ said RODRIGUEZ dropped off the cocaine payment with her. At approximately 8:30 p.m., LORENZO called the buyer. LORENZO said he had sold the poor quality kilogram of cocaine that the buyer returned with no complaints. The buyer said that quality of cocaine was good to snort as powder cocaine but not good to cook into crack cocaine. At approximately 9:05 p.m., LORENZO received a call from MARCELO. During the call, LORENZO said he had obtained payment from RODRIGUEZ, which he would deliver to MARCELO. At approximately 9:24 p.m., an agent saw LORENZO seated in a vehicle which was parked in front of MARCELO's residence. LORENZO was talking with MARCELO, who was leaning in the open front passenger window. At approximately 9:32 p.m., LORENZO received a call from MARCELO. MARCELO said the cocaine payment for the kilogram of cocaine was $200 short. LORENZO said RODRIGUEZ must have made the mistake and assured MARCELO that he would get the $200 to MARCELO later.

11. On April 19, 2012, MARCELO and others were arrested with approximately 9 kilograms of cocaine in Palm Beach County, in the Southern District of Florida.

Based upon the aforementioned, I respectfully submit that probable cause exists to believe that Jesus HERNANDEZ, Domingo Antonio RODRIGUEZ, a/k/a "Giovanni,"

9

Francisco LORENZO, a/k/a "Panchito," a/k/a "Pancho," Isbel GUTIERREZ and Jesus ROJAS, a/k/a "Tico," have committed the offense of Conspiracy to Possess With Intent to Distribute and Possession With Intent to Distribute a controlled substance, that is five hundred grams or more of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and b(1)(B) and 846.

Ian Lance MacVane
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me on this 20th day of April, 2012. DLB

DAVE LEE BRANNON
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.   12-8163-DLB

UNITED STATES OF AMERICA

v.

JESUS HERNANDEZ,
DOMINGO ANTONIO RODRIGUEZ,
 a/k/a "Giovanni,"
FRANCISCO LORENZO, a/k/a "Panchito,"
 a/k/a "Pancho,"
ISBEL GUTIERREZ and
JESUS ROJAS, a/k/a "Tico"

            Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?    _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?    _____ Yes   __X__ No

                                Respectfully submitted,

                                WIFREDO A. FERRER
                                UNITED STATES ATTORNEY

                        BY:     /s/ Susan Osborne for
                                RINKU TRIBUIANI
                                ASSISTANT UNITED STATES ATTORNEY
                                Florida Bar No. 0150990
                                500 S. Australian Avenue, Suite 400
                                West Palm Beach, FL 33401-6235
                                Tel: (561) 820-8711
                                Fax: (561) 820-8777
                                Rinku.Tribuiani@usdoj.gov